NOT FOR PUBLICATION

R E C E I V E D

JAN 3 1 2017

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHRISTOPHER RAD,

      Plaintiff,

  v.

UNITED STATES ATTORNEY'S OFFICE,

      Defendant.

Civ. No. 15-2415

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter is before the Court upon a motion for summary judgment filed by Defendant the United States Attorney's Office for the District of New Jersey ("Defendant"). (ECF No. 56). Plaintiff Christopher Rad ("Plaintiff") opposes the motion. (ECF No. 59). Previously, Plaintiff filed a motion to order production for in camera review, which Defendant addresses in its motion for summary judgment. (ECF No. 51). The Court has decided the motions based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's motion for summary judgment will be granted and Plaintiff's motion to order production for in camera review will be denied.

## BACKGROUND

On November 30, 2012, Plaintiff was convicted of six counts arising from a securities fraud scheme. (*See United States v. Rad*, Cr. No. 11-0161, Jury Verdict, ECF No. 68). On or about February 5, 2015, Defendant received two Freedom of Information Act ("FOIA") requests

1

from Plaintiff.[1]  (Second Supplemental Decl. of Princina Stone ("Stone Decl.") at ¶ 6, ECF No. 56-4).  Plaintiff sought a variety of records related to his criminal case.  (FOIA Requests, Stone Decl. Exs. A and B).  On April 6, 2015, Plaintiff filed suit against Defendant, alleging that Defendant had failed to respond to his FOIA requests within twenty days.  (Pl.'s Compl. at ¶ 7, ECF No. 1).

Plaintiff's First FOIA request sought the following information related to his criminal case, No. 3:11-CR-0016: "(i) Skype subpoenaed records for the identity 'trevman' and interview notes claimed to exist by FBI Agent Lauri Allen; (ii) The last known address and or any other contact information for Trevor Ruiz; (iii) The subpoena used to subpoena the Skype records claimed to exist by Allen, and return service of the subpoena; (iv) Any and all information from Optonline and how it was received by your office. If it was received by subpoena … a copy of that subpoena and return of service."  (Stone Decl., Ex. A).  Plaintiff's second FOIA request also sought information related to his criminal case: "(i) Any and all E-gold records that are held relating to the above case; (ii) The subpoena and return of service used to get the E-gold records; (iii) Any and all from the Bank of America related to the above case; (iv) The subpoena and return of service used to get the Bank of America Records." (Stone Decl., Ex. B).

On September 17, 2015, Defendant forwarded Plaintiff's FOIA requests to the Executive Office for United States Attorneys ("EOUSA").  (Stone Decl. at ¶ 6).  EOUSA responded to Plaintiff's requests, sending him relevant records on January 15, 2016, February 17, 2016, and April 11, 2016.  (*Id.* at ¶¶ 9–12).  EOUSA informed Plaintiff that many records he requested were withheld in part or in full because they fell under FOIA's exemptions.  (*See* Responses to

---

[1] The Court notes that Plaintiff has failed to respond to Defendant's Statement of Material Facts in connection with this motion for summary judgment.  Given Plaintiff's *pro se* status, the Court will not consider this failure as Plaintiff's outright admission of the facts contained in Defendant's Statement of Material Facts, but rather will draw the relevant facts from the record. *See Oguguo v. Wells Fargo Bank*, 2016 WL 3041853, at *1 n.3 (D.N.J. May 27, 2016).

FOIA Requests, Stone Decl. Exs. C and D).  Additionally, the Federal Bureau of Investigation

("FBI") was also involved in reviewing and sending records to Plaintiff.  (Stone Decl. at ¶ 10).

On March 18, 2016, the FBI sent Plaintiff responsive records, with certain deletions made

pursuant to FOIA's exemptions.  (Fourth Declaration of David M. Hardy ("Hardy Decl.") Ex. C,

ECF No. 57).

Previously, Plaintiff filed a motion for a preliminary injunction and Defendant filed its

first motion for summary judgment.  (ECF Nos. 32, 35).  On July 13th, this Court issued an

opinion denying Plaintiff's motion for a preliminary injunction and denying Defendant's first

motion for summary judgment without prejudice ("July 13th Opinion," ECF No. 46).  Soon

thereafter, following submissions by both parties and Plaintiff's failure to oppose the

Government's withholding of certain Bank of America and Opt-Online records originally

requested by Plaintiff, the Court advised the parties that the documents still at issue in this case

are those that were responsive to Plaintiff's requests for documents concerning E-gold and

Trevor Ruiz, but were withheld by the Government.  (Letter Order at 1, ECF No. 52).

Subsequently, Plaintiff filed a motion to order production for in camera review, and Defendant

filed a second motion for summary judgment on September 23, 2016.  (ECF Nos. 51, 56).  In

connection with Defendant's motion, Defendant submitted certain documents that were withheld

pursuant to the relevant FOIA exemptions to the Court for in camera review.  Therefore,

Defendant's motion for summary judgment and Plaintiff's motion to order production for in

camera review are presently before the Court.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary

judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Summary judgment is appropriate in a FOIA case when the defendant's affidavits "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Carp v. I.R.S.*, 2002 WL 373448, at *4 (D.N.J. Jan. 28, 2002) (citation omitted).

## ANALYSIS

### I. Defendant's Motion for Summary Judgment

FOIA mandates that agencies perform searches that are "reasonably calculated to uncover all relevant documents." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Agencies are then required to produce the relevant documents unless one of nine FOIA exemptions applies. *See* 5 U.S.C. § 552(b). If an agency believes one of the exemptions applies, then "[t]he agency bears the burden of justifying the withholding, and the [district] court reviews the agency claims of exemption *de novo.*" *OSHA Data/CIH, Inc. v. U.S. Dep't of Labor*, 220 F.3d 153, 160 (3d Cir. 2000) (citation omitted) (alteration in original).

4

Therefore, there are two issues that the Court will address in determining whether Defendant is entitled to summary judgment. First, whether the Government conducted an adequate search that was reasonably calculated to uncover all the documents relevant to Plaintiff's FOIA request, and second whether Defendant has proven that the relevant documents were properly withheld only as appropriate under the relevant FOIA exemptions. The Court will address each in turn.

### I.    Adequacy of the Search

In the July 13th Opinion, the Court previously determined that Plaintiff was not challenging the adequacy of the search, and that "it appears that [the Government] search was reasonably calculated to reveal all relevant documents, thus fulfilling one of FOIA's requirements." (July 13th Opinion at 2, ECF No. 46). The parties do not present any new arguments on this issue, and Plaintiff again does not challenge the adequacy of the Government search. (*See* Def.'s Br. at 2, ECF No. 56-8; Pl.'s Br., ECF No. 59). The Court is satisfied that the Government search was reasonably calculated to reveal all relevant documents. Thus, the first of FOIA's requirements is fulfilled.

### II.   Withholding of Documents under FOIA Exemptions

The next issue that the Court must address is whether Defendant has proven that the EOUSA and FBI properly withheld documents under the appropriate FOIA exemptions. An agency can meet its burden by filing an affidavit that describes the material withheld and explains why that material falls under a particular exemption. *McDonnell v. United States*, 4 F.3d 1227, 1241 (3d Cir. 1993). Specifically, agencies are generally required to submit a "*Vaughn* index" (named after *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) the case in which the requirement was articulated). The *Vaughn* index must be sufficiently detailed so that the plaintiff and the district court can obtain a "clear explanation of why each document or portion of

a document withheld is putatively exempt from disclosure." *Hinton v. Dep't of Justice*, 844 F.2d
126, 129 (3d Cir. 1988).

Defendant argues that documents responsive to Plaintiff's FOIA requests were properly
withheld under Exemptions 3, 6, 7(C), 7(D), and 7(E). The documents still at issue in this case
are those that were responsive to Plaintiff's FOIA requests for documents concerning E-gold and
Trevor Ruiz, but were withheld. (Letter Order at 1, ECF No. 52). Therefore, the following of
Plaintiff's initial requests are still at issue: (1) Skype subpoenaed records for the identity trevman
and interview notes claimed to exist by FBI Agent Lauri Allen; (2) The last known address and
or any other contact information for Trevor Ruiz; (3) The subpoena used to subpoena the Skype
records claimed to exist by Allen, and return service of the subpoena; (4) Any and all E-gold
records that are held relating to Plaintiff's criminal case; (5) The subpoena and return of service
used to get the E-gold records. The Court will address the five claimed exemptions and their
applicability to the relevant documents.

### a. Exemption 3

FOIA Exemption 3 provides that an agency may withhold documents that are
"specifically exempted from disclosure by [another] statute." 5 U.S.C. § 552(b)(3). "Exemption
3 differs from the other FOIA exemptions in that its applicability depends less on the detailed
factual contents of specific documents. Instead, the sole issues for decision in determining the
applicability of Exemption 3 to a particular set of documents are the existence of [another]
relevant statute and the inclusion of withheld material within the statute's coverage." *McDonnell
v. United States*, 4 F.3d 1227, 1246 (3d Cir. 1993) (citation omitted). Federal Rule of Criminal
Procedure 6(e), which governs federal grand jury proceedings and imposes a general rule of
secrecy on many individuals present during grand jury proceedings, is a statute that falls within
Exemption 3. *McDonnell*, 4 F.3d at 1246–47 (3d Cir. 1993); *Amro v. U.S. Customs Serv.*, 128 F.

Supp. 2d 776, 787 (E.D. Pa. 2001). "All grand jury subpoenas ... and therefore their dates of issuance fall within FOIA's third exemptions." *Lopez v. Dep't of Justice* , 393 F.3d 1345, 1350 (D.C. Cir. 2005).

Here, EOUSA invoked Exemption 3 to withhold in full seven grand jury subpoenas and nine pages of E-gold and Skype records obtained through grand jury subpoenas. *See* Stone Decl. ¶ 25; Ex. H (Second Supplemental *Vaughn* Index at 2–4). These documents relate to a federal grand jury proceeding and are governed by Rule 6(e). The release of information contained in these documents has the potential to reveal substantive information about a grand jury investigation. The Court finds that these documents fall within FOIA Exemption 3, and that the relevant documents were properly withheld under Exemption 3.

### b. Exemption 7(D)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" where disclosure would result in one of the six enumerated harms, set forth in 5 U.S.C. § 552(b)(7). To qualify for withholding under any subsection of Exemption 7, records must first satisfy a threshold requirement: that they are "compiled for law enforcement purposes." 5 U.S.A. § 552(b)(7). An agency seeking to apply Exemption 7 "does not have to identify a particular individual or incident as the object of an investigation into a potential violation of law or security risk." *Abdelfattah*, 488 F.3d at 185 (citation omitted). Rather, the agency must only show "that the relationship between its authority to enforce a statute or regulation and the activity giving rise to the requested documents is based upon sufficient information to support at least a colorable claim of the relationship's rationality." *Id.* at 186.

One of the specific Exemptions within Exemption 7 is Exemption 7(D) which allows an agency to withhold law enforcement records if their release "could reasonably be expected to disclose the identity of a confidential source." *See* 5 U.S.C. § 552(b)(7)(D). Under this

7

exemption, "a source should be deemed confidential if it furnished information with the understanding that the government would not divulge the communication except to the extent that the [agency] thought necessary for law enforcement purposes." *McDonnell*, 4 F.3d at 1258.

Here, the FBI withheld thirty-four pages of E-gold records pursuant to Exemption 7(D). (Hardy Decl. at ¶ 30). These documents were compiled during the FBI's criminal investigation of Plaintiff, thus it is clear that they were withheld for law enforcement purposes. Further, Defendant claims that the FBI withheld the documents to protect the names, identifying data, and/or information provided by a confidential source under an express assurance of confidentiality. (*Id.* ¶ 30.). The Court finds that the FBI properly withheld these documents under Exemption 7(D).

### a. Exemption 6 and Exemption 7(C)

Pursuant to Exemption 7(C), an agency may refuse to disclose information "compiled for law enforcement purposes" when its production "could reasonably be expected to constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7)(C). When an agency raises Exemption 7(C), the requestor must first put forth a significant public interest, "an interest more specific than having the information for its own sake. Second, the [requestor] must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2004). "Absent proof of [government] misconduct," there is little reason to invade the privacy interests shielded by Exemption 7(C). *Manna v. U.S. Dep't of Justice,* 51 F.3d 1158, 1166 (3d Cir. 1995).

Exemption 6 also allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 covers "records that can be identified as applying to a particular individual"—not merely "those files that contain intimate details or highly

8

personal information." *Berger v. IRS*, 288 F. App'x 829, 832 (3d Cir. 2008). Exemption 6 contemplates a similar balancing of interests as Exemption 7(C). *McDonnell,* 4 F.3d at 1252.

In this case, the EOUSA and the FBI relied on Exemption 6 and 7(C) to withhold names, identifying information, and records relating to (1) third party E-gold users or accountholders; (2) government employees involved in Plaintiff's investigation and prosecution, including FBI Special Agents; (3) third parties who were mentioned in FBI records; and (4) third parties who provided information to the FBI. (*See* Stone Decl. ¶¶31–32; Ex. H (*Vaughn* Index at 1–5); Hardy Decl. ¶¶ 23–27). Plaintiff argues that the FBI has not carried its burden in invoking Exemption 6 and 7(C). The Court disagrees. Further, the Court is not persuaded that Plaintiff's unsubstantiated allegations of government misconduct constitute a sufficient public interest that would warrant disclosure here. Nor is the Court persuaded that the release of the withheld information here, which could risk the privacy and safety of those named individuals, would advance any significant public interest.

Plaintiff also argues that the FBI wrongfully invoked Exemptions 6 and 7(C) because it has not shown that the individuals in these records are still alive. The Third Circuit has held that "it is within the discretion of the district court to require an agency to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive." *Frankenberry v. F.B.I.*, 567 F. App'x 120, 122 (3d Cir. 2014). Defendant has undertaken substantial efforts to attempt to ascertain the life status of the relevant individuals here, including searching an external database named Consolidated Lead Evaluations and Reporting ("CLEAR"). (Hardy Decl. ¶ 37). The Court is satisfied that the Government's efforts were reasonable, and the Court declines to require the relevant agencies to affirmatively demonstrate the life status of the individuals involved here. After balancing the relevant interests and considering all of the

9

parties' arguments, the Court finds that Defendant properly withheld documents pursuant to both Exemptions 6 and 7(C).

### b.  Exemption 7(E)

An agency may withhold records that are "compiled for law enforcement purposes" under Exemption 7(E) when their production would disclose "techniques and procedures for law enforcement investigation or prosecutions, or would disclose guidelines for law enforcement investigation or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  An agency's burden in asserting exemption 7(E) is relatively low because, "[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Qatanani v. Dep't of Justice*, 2015 WL 1472227, at *14 (D.N.J. Mar. 31, 2015) (citations omitted) (alteration in original).

Here, the FBI invoked Exemption 7(E) to protect the name of an undercover operation referenced in the records at issue.  (Def.'s Opp'n Br. at 20; ECF No. 56-8; Hardy Decl. ¶ 32).  Defendant argues that the disclosure of the name of the undercover operation could provide insight into the actual operation, which criminals could use to develop countermeasures to circumvent future operations.  The FBI also asserted Exemption 7(E) to protect an internal, non-public intranet web address specific to the FBI.  (Hardy Decl. ¶ 33).  Finally, the FBI also asserted Exemption 7(E) to protect information as to whether an investigation is categorized as "full" or "preliminary," as well as the date each investigation was initiated.  (Hardy Decl. ¶ 34).  The FBI offered sufficient reasons for withholding the information.  Considering the low burden that is required under Exemption 7(E), the Court finds that the FBI properly withheld information pursuant to Exemption 7(E).

In sum, the Court has reviewed the submissions of the parties and has also reviewed certain withheld documents submitted to the Court for in camera review by Defendant. After doing so, the Court is persuaded that Defendant has "describe[d] the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption." *Carp*, 2002 WL 373448, at \*4 (citation omitted). Therefore, the Court will grant Defendant's motion for summary judgment.

## II.    Plaintiff's Motion to Order Production for In Camera Review

Defendant submitted certain documents to this Court in connection with its motion for summary judgment. These documents are: (1) Exhibit I to the Stone Declaration, consisting of a "see-through" copy of the documents attached as Exhibit G to the Stone Declaration; (2) Exhibit E to the Hardy Declaration, consisting of a "see-through" copy of the documents attached as Exhibit D to the Hardy Declaration; and (3) Exhibit J to the Hardy Declaration, consisting of a "see-through" copy of the document attached as Exhibit I to the Hardy Declaration. In his motion to order production for in camera review, Plaintiff seeks to require Defendant to produce all of the relevant documents requested by Plaintiff in his FOIA requests. This Court declines to do so. Therefore, Plaintiff's motion to order production for in camera review will be denied.

## CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment will be granted and Plaintiff's motion to order production for in camera review will be denied. An appropriate order will follow.

ANNE E. THOMPSON, U.S.D.J.

Dated: 1/31/17

11